Elon Berk, Esq. [SBN 209642]
**GUROVICH, BERK & ASSOCIATES, APC**
15250 Ventura Blvd., Suite 1220
Sherman Oaks, California 91403
Tel: (818) 205-1555
Fax: (818) 205-1559
Admitted Pro Hac Vice

Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax: (602) 254-8808
jody@berkelawfirm.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| USA, | Case No. 2:18-cr-01626-MTL |
| Plaintiff, | **DEFENDANT'S POST-HEARING MEMORANDUM REGARDING RESTITUTION** |
| vs. | |
| Pierre Zarokian, | |
| Defendant. | |

Defendant Pierre Zarokian ("Mr. Zarokian"), through undersigned counsel, hereby files this memorandum subsequent to his Restitution hearing.

## ANALYSIS

The Government is insisting the hack and subsequent extortion attempt by the Co-Defendant are one grand conspiracy. Yet, all chat logs in the Government's possession

1

support the assertion that the extortion was not part of the conspiracy, rather an opportunistic crime by the Co-Defendant. (Although the Government mentioned a chat between Mr. Zarokian and Epiphanio, there was never an extortion scheme between the two). In fact, Mr. Zarokian, in his Plea Agreement, did not admit to any extortion (nor was there any mention of the same). Mr. Zarokian was not charged with conspiracy to extort Rip Off Report ("ROR"), but the Co-Defendant hacker was. Therefore, any of the work performed in connection with the extortion must be excluded from any restitution calculation, including the related legal fees. Unfortunately, Mr. Crossman used the terms "extortion" and "hack" interchangeably in his billing (at some instances on the same line item), but he indicated that he was not involved in any of the extortion work. (See Transcript of Restitution Hearing, dated June 11, 2020, pp. 22, ll. 7-15, attached hereto as Exhibit A). So, on one hand, Mr. Crossman is billing for conferences regarding the extortion, but testifies that he was not involved. Thus, any billing for work outside the scope of dealing with a hack wherein the Co-Defendant removed certain data from the ROR database, should be excluded.

In reviewing the records and testimony presented, a significant portion of the requested restitution is not related to Mr. Zarokian's acts (or the conspiracy in which he admitted to be a member) rather research and upgrades to the Victim's computer system that are not necessarily restorative but an upgrade to bring up the system up to new standards. A simple review of this billing would support the aforementioned conclusion. As an example, Mr. Crossman's Declaration (and corroborating testimony) indicates that a portion of the work counted towards restitution was for guiding the ROR team on

2

remediation, software updates for Windows, Outlook, security software, Skype, internet browsers, password management, email use, phone use, communication, backup usage and security best practices.  (Exhibit A, p. 12, l. 15 to p. 13 l. 4).  These charges are clearly not allowed under the statute and case law.

When we take a deeper dive into the Government's supporting documentation, we have invoices that total a sum greater than the requested restitution.  Mr. Crossman explained during his testimony that this is because he removed items that are not related to restitution (without any explanation as to what he counted towards restitution - i.e. how many hours from a line item were counted towards restitution and why).  (Exhibit A, p. 18, ll. 12-17).  So, Mr. Zarokian is left with a universe of invoices but no declaration or testimony as to which specific line items the victim is asking for as restitution other than Mr. Crossman's own assessment as to what he adjudicated to be restitution.  An example of the aforementioned is when asked about certain hardware additions, Mr. Crossman indicated that he did not count that towards restitution, but an invoice for the same was presented.  (Exhibit A, p. 18, ll. 12-17).

In addition to billing for updates not related to the remediation of the damage caused by the hack, Mr. Crossman testified that the billing continues for over one and one-half years after the hack.  This lengthy work period was due to research whenever ROR felt there was a new intrusion even after the hacker was in custody—and none were ever found.  (Exhibit A, p. 17, ll. 11-24).  These are substantial hours of work that would have been conducted in the ordinary course of business when an unauthorized intrusion is suspected.  In this case, apparently ROR believed intrusions existed for over a year after the hack in

question.   Why should Mr. Zarokian pay for every suspected intrusion and the related research indefinitely?   ROR would have to conduct the same research regardless of Mr. Zarokian's prior acts.

Mr. Crossman's firm's invoices for research, identification of the hack, and extortion work, and simple security upgrades and training are intertwined leaving the Court without any clarity as to the actual work done as to the computer hack, its identification and restoration of the data. (See Doc #35-1, pp. 21-22).  A simple example of the foregoing are invoices for upgrades such as new servers, security upgrades, login enhancements, managing AWS (amazon server) workspace, etc.   As such, this Court should not order restitution when the description of the work performed to repair the damage is vague and intertwined with damage that was caused by the Co-Defendant in a crime that is separate from the instant offense.   The Court should also not order restitution for security and software upgrades that are not leaving the victim whole, but rather are giving the victim a windfall of having the newest technology updates (both software and hardware).  A simple review of the invoices in Doc. 35-1 illustrates that most of the actual hack restoration was done within the first 45 days after the hack.   The site was restored and Mr. Zarokian's clients' respective ROR complaint web pages were reinstated.   Yet, the billing continued for a year and half searching for "time bombs" that never materialized, researching other hacking attempt that were never there, and upgrading protocols and systems from future intrusions.

Mr. Crossman also stated that some hours were spent on ancillary web sites such as edmagdison.com to see if they were hacked, but no such hack was discovered.  He did not

4

rely on any indicia that a potential hack occurred, rather just researched all systems. All such hours be deducted because they were not hacked, and hence Mr. Zarokian should not be liable for other servers' maintenance when there were no issues with them. Typically, such maintenance and security audits should be done on servers regardless of suspected hacking.

Also, ROR retained services from Out of Box Innovations (Doc. 35-1, page 116). The disputed billing is the review and security audits of the website and new design for the sum of $3,000 and the sum of $600 for the "new hack." Since Mr. Crossman testified that no new hacks were discovered, such billing must be excluded. With respect to the final two line items, Mr. Crossman testified that he was not able to determine, with any certainty, what the final portion of the billing was exactly for and how its related to the hack. (Exhibit A, p. 23 to p. 24, l. 9). The only invoice provided by the ROR for Out of the Box Innovations totals $6,750 (even though the total due indicates a $10,875 balance). (Doc. 35-1, p. 116). However, the ROR damage calculation in the same exhibit for Out of the Box is for $11,062.50. This is an example of the various issues with all the exhibits as they lack the necessary specificity to determine the sum of actual restitution due. Based on the one invoice presented for Out of the Box Innovation, the only sum that is attributed to the hack is the total of the three line items of $3,150 (as opposed to the $11,062.50 requested). Therefore, the maximum amount that should be awarded as restitution for the Out of Box Innovations invoices is $3,150.

Based on a review of the invoices presented, it is clear that some work had to be conducted in order to identify and remedy the breach. At the same time, its abundantly

clear that ROR upgraded hardware and software for its website and backend infrastructure so that future intrusions are defended and identified which should not be calculated as restitution. ROR wants the Court to believe that its staff took the entire bill and figured out how should be attributed towards restitution.  But, without an invoice or other form of explanation of how much work was conducted and for what specific tasks, the Government cannot meet its burden herein.

For the Government to provide proof of the actual amount of restitution owed by Mr. Zarokian, it needed to submit details of what steps were taken to close the security breach and reports and analysis results from Teris and Out of the Box Innovations (the other vendors that provided support to ROR).  Moreover, the Government needed to address whether after the extortion attempt there was any monitoring in place to see what the hacker was removing, and, if not, why there was not.  The Government also needed to address whether and how the hacker was removing content after the extortion since the FBI was already involved with the victim and identified the hacker during the extortion back and forth: Was he just accessing through server login or was he sending email requests for removal?

Finally, the work presented by the Jaburg Law Firm in the amount of $1,755.00 was related solely to the extortion calls and how to deal with the person making demands and to protect their systems and communications.  This was all caused by the Co-Defendant and was not related to the initial hack and related conspiracy.  To restate, the hacker saw an opportunity to enrich himself and engaged in an extortion scheme that was not related to his

dealings with Mr. Zarokian.   As such, any restitution related to such extortion must be excluded.

As currently presented, the invoices, do not allow this Court to determine what the actual restitution to ROR would be.   As such, defendant is unable to present this Court with a specific counter figure regarding what the restitution amount should be.

## CONCLUSION

In light of the foregoing, Defendant respectfully submits that this Court must exclude all invoice line items that are vague and do not clearly specify how much time was spent on hacking vs. the extortion or upgrade of equipment and software by ROR.   Defendant submits that any work done after January 2017 could not have been for restoring and repairing the prior hack and since any additional work done for checking hack issues was to see if backdoor or time bombs were left behind, but no such thing was discovered, Zarokian should not be liable for fees related to those.   Any work done in regards to Extortion, paying out Extortion fees, talking to legal about Extortion, talking to IT about Extortion, should be eliminated.   Any line item that clearly does not indicate it was for a hacking issue, should be eliminated.   Mr. Crossman's testimony seemed to be geared to benefit ROR, even when his memory failed him as to past events.   This clearly illustrates his bias for ROR and his inability to provide an accurate picture of restitution.

Finally, once this Court determines the appropriate restitution, Mr. Zarokian is seeking that payment be ordered as a 10% down payment with monthly payments in-line with Defendant's financial ability.

. . .

7

DATED this 29th day of June, 2020.

BERKE LAW FIRM, PLLC


By   s/ Jody C. Corbett
     Jody C. Corbett

GUROVICH, BERK & ASSOCIATES, APC


By   s/ Elon Berk
     Elon Berk

Attorneys for Defendant Pierre Zarokian

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Elon Berk
gba_law@yahoo.com
*Attorney for Defendant*

Andrew C. Stone
andrew.stone@usdoj.gov
James Richard Knapp
james.knapp2@usdoj.gov
Jennifer Fara Levinson
Jennifer.Levinson@usdoj.gov
*Assistant U.S. Attorneys*

By     s/ Jody C. Corbett