WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01626-001-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Pierre Zarokian, | |
| Defendant. | |

This Order addresses the United States' request for restitution on behalf of the victim, Xcentric Ventures, LLC d/b/a Ripoff Report ("Xcentric"). The United States seeks restitution in the amount of $87,367.25. At Defendant Pierre Zarokian's request, the Court postponed its decision on restitution until after sentencing to give him and his attorneys an opportunity to review the restitution claim. On June 11 and 18, 2020, the Court held an evidentiary hearing on restitution and heard argument. (Docs. 59, 67.) The parties have submitted extensive briefing. (Docs. 46, 53, 54, 64, 69, 70.) The Court has considered the parties' arguments and the factors set forth under 18 U.S.C. § 3664(f)(2). The Court determines that Mr. Zarokian must pay $87,367.25 in restitution to Xcentric.

**I.    BACKGROUND**

Xcentric operates the RipoffReport.com website that allows customers to anonymously post complaints about people and businesses. (Doc. 41 ¶ 9.a.) Mr. Zarokian operated a company that offered "reputation management services," which included services that removed negative customer complaints from websites such as Ripoff Report.

(*Id.*) To provide results for his clients, Mr. Zarokian worked with another individual, a co-defendant, who Mr. Zarokian knew had gained unauthorized access to Xcentric's computer systems. (*Id.*) Mr. Zarokian paid this person $1,000 per job while charging his clients a fee that ranged between $1,000 and $5,000. (*Id.*)

The intrusion method employed by the co-defendant involved a "brute force attack," through which software automatically generates many consecutive guesses to learn the computer system's login and password information. (Doc. 35 ¶ 3.) Once the co-defendant obtained the system's credentials, he overrode the login and password protection through an existing account for an Xcentric employee. (*Id.*)

While Mr. Zarokian and his co-defendant were working together on this conspiracy, the co-defendant demanded a $90,000 payment from Xcentric. (Doc. 35 ¶ 4.) The co-defendant threatened to publicly distribute stolen data, including the personal identifiable information of Ripoff Report's users, if Xcentric did not pay the extortion demand. (*Id.*)

Mr. Zarokian pleaded guilty to one count of conspiracy in violation of 18. U.S.C. § 371, a Class D felony offense. Mr. Zarokian conspired with the co-defendant to intentionally damage a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A). The Court adopted the plea agreement and sentenced Mr. Zarokian. (Docs. 40, 41.) As part of his plea agreement, Mr. Zarokian agreed to pay full restitution to Xcentric in an amount not to exceed $200,000. (Doc. 41 ¶ 3.c.)

**II.   DISCUSSION**

   **A.   Request for Restitution**

The Government asserts that this prosecution involves a crime against property under Title 18 of the United States Code and thus the Mandatory Victims Restitution Act ("MVRA") applies. Mr. Zarokian does not dispute the applicability of the MVRA. The Court finds that the MVRA applies because this case involves a crime against Xcentric's personal property by harming its computer systems. *See United States v. Gammell*, 932 F.3d 1175, 1180 (8th Cir. 2019).

The MVRA requires the payment of restitution to the victim of the offense.

18 U.S.C. § 3663A(a)(1), (b)(1), (c)(1)(A)(ii). "The MVRA requires the district court to order restitution in the amount of the victim's actual loss." *United States v. Anieze-Smith*, 923 F.3d 565, 571 (9th Cir. 2019). Mr. Zarokian does not dispute that Xcentric is a victim of his offense. Xcentric bore the financial loss caused by his unlawful conduct. The Court therefore finds that Xcentric is a victim of the offense and it is entitled to restitution.

The United States argues that Xcentric's expenditures are subject to a restitution order because each expense was necessary to mitigate and remediate the damage caused by Mr. Zarokian's criminal act. (*See* Doc. 46 at 3.) This consists of these expenses paid by Xcentric: (1) $66,557.55 paid to Delirious Visions, LLC for services relating to investigating and remediating the breach into Xcentric's computer systems; (2) $1,625.00 paid to Gingras Law Office for legal services; (3) $1,755.00 paid to Jaburg & Wilk, P.C. for legal services; (4) $11,062.50 paid to Out of Box Innovations, a subcontractor of Delirious Visions; and (5) $5,367.20 paid to Teris, a computer forensics company. Additionally, the United States seeks restitution in the amount of $1,000 representing the extortion fee that Xcentric paid to Mr. Zarokian's co-defendant. The total restitution sought for Xcentric is $87,367.25.

Mr. Zarokian objects to the Government's request for restitution to the extent that it seeks restitution (1) relating to the extortion committed by his co-defendant and (2) for expenses that exceed restoring Xcentric's computer systems to their pre-breached state. (*See* Doc. 53 at 4.) He also asks that the Court allow him to pay any restitution with a down payment and a monthly payment plan. When the parties dispute "the proper amount or type of restitution," the Court will decide the amount of restitution payable and the Government has the burden to establish amounts payable by a preponderance of the evidence. 18 U.S.C. § 3664(e).

### B.  Extortion-Related Expenditures

Mr. Zarokian points out that he was not directly involved with or charged with the co-defendant's extortion offense. For that reason, he argues, he is not responsible to pay restitution for the $1,000 extorted amount or any remedial expenses related to the extortion.

Mr. Zarokian generally objects to many of Delirious Visions' time entry narratives that use the terms "hack" and "extortion" interchangeably. He also argues that he is not responsible for some expenditures, such as legal fees paid to Jaburg & Wilk, P.C., because they relate to reputation management services relating to the extortion.

Under the MVRA, a "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). With the phrase "proximately harmed," the statute establishes that restitution applies to losses that are directly related to the defendant's conduct. *United States v. Hackett*, 311 F.3d 989, 992–93 (9th Cir. 2002); *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002). The Court finds that the co-defendant's extortion is directly related to Mr. Zarokian's participation in the conspiracy. On behalf of his clients, Mr. Zarokian enlisted the co-defendant's involvement in hacking into Xcentric's computer systems to cause damage. As the United States argues in its Supplemental Memorandum (Doc. 64 at 3), "the extortion and the 'reputation management' scheme both flowed from the underlying computer intrusion" that Mr. Zarokian instigated. The Court agrees with the United States and finds that it has established, by a preponderance of the evidence, that extortion-related expenditures are appropriately included in the restitution calculation. This includes the $1,000 extortion payment and any other expenses relating to it, including legal fees and reputation management service fees.

### C.     Computer Security Investigation and Remediation Expenses

Mr. Zarokian next objects to amounts billed by vendors, particularly Delirious Visions, that provided security and software investigation and remediation for Xcentric's computer systems. He argues that Xcentric has incurred expenses beyond those necessary to restore its computer systems to the pre-breached state. The evidence submitted by the United States, however, undermines the basis of this objection. None of the expenses relate to upgrading Xcentric's computer systems. Instead, they are related to investigating the hack; determining whether the systems remained compromised to unauthorized intrusion; and investigating and repairing damages from the security breach. The United States called

Justin Crossman as a witness at the evidentiary hearing on restitution. Mr. Crossman is an owner of Delirious Visions, LLC, the vendor mainly responsible for investigating and remediating the hack. Mr. Crossman submitted a declaration in support of the restitution request. (Doc. 46-1.) Mr. Crossman testified that none of his company's expenses related to hardware or software improvements. (Doc. 64-1 at 3.) During his work, Mr. Crossman managed the involvement of two other vendors, Teris and Out of Box Innovations. (*Id*. at 4.) Mr. Crossman testified that their work focused exclusively on investigating and repairing the damage caused by the breach. (*Id*. at 4–5.) He added that "I can further elaborate on that by saying that there were no hardware or software updates, and so that particular point is moot." (*Id*. at 5.) Mr. Zarokian did not introduce any evidence showing that these expenditures were made for hardware or software updates. Nor did Mr. Zarokian introduce any controverting evidence showing that the methods undertaken by Delirious Visions or the other vendors was unreasonable or unnecessary.

The Eighth Circuit recently addressed this issue in *Gammell*. There, the defendant argued that the restitution order "improperly included expenses that victims incurred for mitigation services and infrastructure modifications, which effectively provided victims with a windfall because it allowed the victims to recover costs against future and speculative property loss due to already-existing security vulnerabilities." 932 F.3d at 1181 (the defendant was convicted of engaging in distributed denial of service ("DDoS") attacks against computers and websites). The court affirmed the restitution order, holding that the victims incurred the expenses "to restore the affected website and applications to proper functionality." *Id*. The court quoted the restitution order, which found that "[t]hese costs effectively equate to repair or cleanup costs because they involve mitigating the damage caused by Gammell's DDoS attacks and restoring a website or web application to its normal functionality." *Id*.

As was the case in *Gammell*, the Court finds that the United States has satisfied its burden of establishing the expenses paid to Delirious Visions, Out of Box Innovations, and Teris are properly included in the restitution payment. Mr. Crossman's testimony

establishes that the work that his company performed—along with the other vendors that acted at his direction—was necessary to investigate and remediate the damage caused to Xcentric's computer systems from Mr. Zarokian's scheme. There is no evidence that any of the work performed or that any expenses were incurred for system upgrades that would amount to a windfall benefit. Mr. Zarokian's objection is, therefore, overruled.

### D. Restitution Payment

"A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). Mr. Zarokian asks that the Court craft the restitution order to permit him a 10% down payment and regular monthly payments. He asks for this payment structure because of his present financial condition and living expenses. The Government argues that Mr. Zarokian should be ordered to pay restitution in a single lump sum. It points to Mr. Zarokian's personal net worth, his monthly income, and the equity in his personal residence.

The Ninth Circuit provides the following guidance for district courts ordering restitution payments:

> When a district court orders a defendant to pay restitution under 18 U.S.C. § 3664, it must "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of . . . the financial resources and other assets of the defendant." In order to meet its obligation under § 3664, a court must "consider" a defendant's financial resources. If the court determines that the defendant is unable to make immediate restitution, the court "must set a repayment schedule in the judgment of conviction."

*United States v. Holden*, 908 F.3d 395, 403–04 (9th Cir. 2018) (quoting 18 U.S.C. § 3664(f)(2)(A); *Ward v. Chavez*, 678 F.3d 1042, 1049–50 (9th Cir. 2012)).

The Court has considered Mr. Zarokian's stated financial condition as it is in the Presentence Investigation Report (Doc. 35 ¶¶ 54–58), his personal and family data that identifies three dependents (*id.* ¶ 38), and his educational and employment record (*id.*

- 6 -

¶¶ 49–50, 52–54). The Court has also considered the victim impact statement. (Doc. 35-1.) Finally, the Court has considered the United States' notification that Mr. Zarokian intends to sell his personal residence that it estimates has about $300,000 in equity. (Doc. 48 at 2.) What was not submitted is documentation to support Mr. Zarokian's debts or his tax records, which the United States Probation Office and the Court requested. Indeed, the Court twice asked Mr. Zarokian to provide his tax records to the Probation Office. The first time was at his sentencing. The second time was during the restitution oral argument. These records are still outstanding.[*]

Based on the evidence presented, the Court finds that Mr. Zarokian has the financial ability to pay the restitution amount as a single lump sum. Despite his current indebtedness, he can generate a substantial monthly income to service his ongoing expenses and debts. His spouse has a Ph.D. and could earn a substantial income. Mr. Zarokian testified that he is working to control his debt and monthly expenditures. This includes replacing his luxury automobiles and selling his home. The sale of his home is expected to produce a cash infusion that greatly exceeds the restitution amount. These facts, coupled with the law's objective in compensating victims of crime, warrants this result.

### III. CONCLUSION

The Court finds that Mr. Zarokian is liable for restitution in the amount of $87,367.25 to Xcentric.

Accordingly,

**IT IS ORDERED** that the Defendant Pierre Zarokian shall pay $87,367.25 in restitution to Xcentric Ventures, LLC. The Judgment in this case (Doc. 42) shall be amended to include restitution in this amount.

///

///

///

---

[*] The Court understands that on June 29, 2020, Mr. Zarokian's attorney emailed the Probation Office stating that the tax returns were attached. They were not. The next day, the Probation Office replied advising that the tax returns were not attached to the email and requested that he resend them. There has been no further communication from the attorney.

**IT IS FURTHER ORDERED** that Defendant's request to make restitution payments in installments is denied.

Dated this 22nd day of July, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge